IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2005

## MAURICE GARRETT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lauderdale County**
**No. 7346    Joseph H. Walker, III, Judge**

_____

**No. W2004-02367-CCA-R3-PC  - Filed September 22, 2005**

_____

The Appellant, Maurice Garrett, appeals the Lauderdale County Circuit Court's denial of his petition for post-conviction relief.  On appeal, Garrett argues that he was denied his Sixth Amendment right to the effective assistance of counsel.  After a review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Rebecca S. Mills, Ripley, Tennessee, for the Appellant, Maurice Garrett.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer Walker, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Procedural Background**

In May of 2003, the Appellant pled guilty to two counts of attempted second degree murder, one count of attempted especially aggravated robbery, one count of especially aggravated burglary, one count of reckless endangerment, and one count of felony possession of a weapon.  As a result of these convictions, the Appellant is currently serving an effective twenty-year sentence as a Range II, multiple offender in the Department of Correction.  The offenses stem from the shootings of

Jerome Isom and Bobby Carroll,[1] which occurred when the Appellant and three co-defendants set out to steal drugs and money located within Isom's mobile home. One of the victims identified the Appellant in a photo line-up as one of the robbers. The Appellant's co-defendants confirmed that the Appellant was the driver of the vehicle and a participant in the planned crimes. The Appellant was described as the leader in the commission of the crimes.

The Appellant's initial trial counsel was appointed following the Appellant's indictment but was permitted to withdraw based upon the Appellant's request that counsel be relieved. Substituted counsel was then appointed and continued to represent the Appellant at the time of his guilty pleas.

In December of 2003, the Appellant filed a *pro se* petition for post-conviction relief alleging that he was denied the effective assistance of counsel by the two attorneys who had separately represented him. Following the appointment of counsel and the filing of an amended petition, an evidentiary hearing was held on September 17, 2004. The post-conviction court denied relief, and this timely appeal followed.

## Analysis

In order to succeed on a post-conviction claim, the Appellant bears the burden of showing, by clear and convincing evidence, the allegations set forth in the petition. Tenn. Code Ann. § 40-30-110(f) (2003). To support a Sixth Amendment claim of ineffective assistance of counsel, the Appellant must establish that counsel's performance fell below the range of competence of attorneys demanded in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, the Appellant must establish (1) deficient representation and (2) prejudice resulting from the deficiency. 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Id*. at 697, 104 S. Ct. at 2069. With a guilty plea, to satisfy the "prejudice" prong, the Appellant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

---

[1] The transcript of the Appellant's guilty plea hearing identifies the victims as Jerome Isom and Bobby Carroll; however, the Appellant's brief and a panel of this court in *State v. Brandon Wallace*, No. W2003-01967-CCA-R3-CD (Tenn. Crim. App. at Jackson, Jan. 28, 2005) identify the victims as Jerome Eisom and Bobby Harrell.

The Appellant argues that his trial attorneys were deficient for failing to: (1) "meet with [him] as much as necessary"; and (2) conduct a proper investigation, interview certain witnesses, develop a strategy, and discuss defenses. The record in this case, however, supports the post-conviction court's finding that the Appellant did not receive the ineffective assistance of counsel.

At the post-conviction hearing, the Appellant testified that his first appointed attorney met with him three or four times. He further testified that he asked trial counsel to interview the victims, visit the crime scene, collect the criminal histories of his co-defendants, and provide him with ballistics reports, hospital records of the victims, and the photo line-up used for his identification. The Appellant also testified that trial counsel did not interview witnesses whom he claimed would support his alibi and confirmed, "that's what made me withdraw him from my case." He related that this attorney never discussed trial strategy and urged him to pursue a plea agreement.

The Appellant testified that after the withdrawal of his first attorney, he met with his second trial counsel three times and that this attorney also failed to honor the requests presented to his first trial counsel. The Appellant stated second counsel never discussed trial strategy and also urged him to accept a plea agreement if he ever wanted to see his children again. As a result, the Appellant testified that he was afraid not to plead guilty but did not understand why he should receive a twenty-year sentence when two of the co-defendants received sentences of ten years.

The Appellant's first trial counsel testified that he conducted an investigation of the case before being discharged and spoke with several individuals whom the Appellant claimed would support his alibi, including the Appellant's brother and the Appellant's hairstylist. Counsel concluded, however, that their alibis could not be substantiated. The Appellant's second trial counsel testified that although he conducted an investigation of the case, he did not specifically interview the alibi witnesses. However, he learned from previous counsel that the Appellant's hairstylist could not pinpoint the specific day and time that the Appellant visited his salon. Additionally, counsel stated that he requested that the Appellant's sister and brother contact his office, but they failed to do so. He discussed the plea agreement with his client for several days before the Appellant reached a decision. Trial counsel informed the Appellant that he could receive a sentence of up to sixty-six years if he went to trial and that one of his co-defendants had received a forty-six year sentence.

The Appellant's hairstylist testified at the post-conviction hearing that he recalled the Appellant visiting his salon during the week in which the crimes were committed, but he could not recall the exact day of the week as his records had been discarded. He did remember that the Appellant requested a "Wave Nuevo," which would have taken several hours to complete and that the Appellant's brother or sister would have picked him up from the salon. The Appellant's sister testified that she specifically recalled picking up her brother from the salon in Dyersburg around 6:00

p.m. on the day the crimes were committed and that they were together for approximately two hours. No proof was introduced, however, as to the time the crimes were actually committed.[2]

In denying relief, the post-conviction court found:

[The Appellant's first trial counsel] testified at the post-conviction hearing that he met with the Petitioner personally on several occasions. He interviewed witnesses that the petitioner told him would be alibi witnesses and they did not support an alibi. [Trial counsel] was given full discovery and sat through the evidentiary portion of the trial of a co-defendant, Mr. Wallace, who was convicted by a jury, and received a sentence of 46 years.

[The Appellant's second trial counsel] assumed the defense of Petitioner after [first trial counsel] was relieved.

[The Appellant's second trial counsel] discussed the legal issues with Petitioner and made investigations as requested. He reviewed the transcript of the evidence of the preliminary hearing and the transcript of the trial evidence. He met several times with petitioner. He went over the transcript of the testimony with Petitioner. They discussed that the victim knew the petitioner and identified him as one of the perpetrators. He worked out a plea arrangement which was acceptable to petitioner.

. . . .

The Petitioner is not satisfied with his sentence. While one co-defendant, who also fired the shots and was tried by the jury received 46 years, two other co-defendants received sentences of 10 years. (The co-defendants who received lesser sentences had less involvement in the events than Petitioner and no prior record. They testified they were led astray by Petitioner.)

. . . .

While the Petitioner maintains now he has an alibi, [the Appellant's first trial counsel] interviewed those witnesses and they did not support the alibi defense. Mr. Thomas, a hairdresser, testified that an attorney contacted him and he could not support the alibi defense. His records had been discarded. He knows that the Petitioner came to get his hair done that week and was in the shop for a couple of hours, but does not know which day. Ms. Grandberry, the sister of Petitioner, testified that she picked the Petitioner up from the hair salon. She believes she picked up her brother about 6 p.m. and went by her mothers house and went back to

---

[2]The prosecutor's comments, which clearly are not evidence, suggest that the crimes occurred earlier in the afternoon and prior to the Appellant's visit to his hairstylist.

the shop on the day he is alleged to have committed the crimes in Lauderdale County. At the time charges were filed against her brother, she did not try to contact her brother's attorneys to tell them this. She did not come forward with the alibi at the time. The Court finds that the sister is not credible. There were three witnesses who personally knew the defendant and identified the petitioner as being involved.

. . . .

The Court finds that petitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210. The petitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The petitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The petitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

The record does not preponderate against these findings. A bare allegation that trial counsel has failed to perform in some manner does not equate to ineffective assistance of counsel. The Appellant offers no explanation as to how additional meetings, further investigation, additional witness interviews, and further strategy development would have changed his decision to plead guilty. Clearly, trial counsel cannot be faulted for failing to interview additional witnesses or to further investigate where there is absolutely nothing to suggest that any further investigation would have benefitted the Appellant's defense. The burden of proving a lost benefit rests with the Appellant. Accordingly, the Appellant has failed to demonstrate either deficient performance or prejudice, the two components of any ineffective assistance claim.

### CONCLUSION

Based upon the foregoing, we conclude that the post-conviction court properly denied the Appellant's petition for post-conviction relief. Accordingly, the judgment of the Lauderdale County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE